**JOSHUA SHAWN DUDLEY**
Email: jdudley279@gmail.com
Plaintiff, Pro Se
2600 E. Dorothy Drive
Orange, California 92869
Telephone: (657) 391-6401

FILED
CLERK, U.S. DISTRICT COURT
09/09/2026
CENTRAL DISTRICT OF CALIFORNIA
BY bom DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

**JOSHUA S. DUDLEY,**
Plaintiff,
v.
COUNTY OF ORANGE;
TELECARE CORPORATION;
RONALD D. LEE, JR.;
DOES 1 through 10, inclusive,
Defendants.

**Case No. 8:26-cv-01530-SSS-PD**
**RENEWED EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER WITHOUT ADVANCE NOTICE; MEMORANDUM OF POINTS AND AUTHORITIES**
Hearing Date: None set
Hearing Time: None set

## I. EMERGENCY RELIEF REQUESTED

Plaintiff Joshua Shawn Dudley, appearing pro se, respectfully applies under Federal Rule of Civil Procedure 65(b) and Central District of California Local Rules 7-17, 7-18, 7-19, 7-19.2, and 65-1 for a renewed temporary restraining order without advance notice. The Court denied Plaintiff's earlier TRO request on June 18, 2026. This application is based on material events occurring after that ruling, including a new August 27, 2026 safety incident and a written September 9, 2026 threat that

Plaintiff will be asked to leave his current residence if August rent is not received this week.

Plaintiff's primary request is prohibitory and temporary: preserve the last practical housing status quo while the Court receives an opposition and considers preliminary injunctive relief. Plaintiff asks the Court to restrain County of Orange and Telecare Corporation, and persons bound by Rule 65(d)(2) who receive actual notice, from causing, directing, inducing, or facilitating Plaintiff's removal, lockout, exclusion, or displacement from 2600 East Dorothy Drive based on the challenged discontinuation or nonpayment of program-funded rent support.

Plaintiff further asks the Court to restrain Defendant Ronald D. Lee, Jr. from initiating direct contact with Plaintiff or entering Plaintiff's bedroom or immediate sleeping area, and from approaching Plaintiff in common areas except in a genuine emergency or when a neutral third-party escort is present, during the brief TRO period.

If the Court determines that the current placement cannot be safely maintained without displacement, Plaintiff requests alternative relief directing County of Orange and Telecare Corporation to coordinate and fund a temporary neutral placement that permits Plaintiff to remain with his trained service dog while the Court considers a preliminary injunction. Plaintiff recognizes that this alternative relief is affirmative in character and therefore requests it only if necessary to prevent the specific harms shown in the declaration.

Plaintiff also requests a temporary prohibition on retaliation, intimidation, coercion, threats, or interference based on Plaintiff's disability-accommodation requests, safety complaints, administrative appeals, law-enforcement reports, dependent-adult protections, or this civil action.

## II. MATERIAL NEW FACTS WERE NOT BEFORE THE COURT ON JUNE 18, 2026

### A. Previously Communicated Separation Measures and the August 27 Incident

The operative verified complaint alleges that on February 13, 2026 Telecare Program

Administrator Felicia Tara Taing informed Plaintiff that housing personnel represented common-area cameras had been reactivated, that Lee should not have unnecessary contact with Plaintiff, and that Lee would be escorted if necessary. Those representations were material to Plaintiff's understanding of the safety measures then in place.

Plaintiff now declares that on August 27, 2026, at approximately 10:20 a.m., Lee opened the front door and attempted to enter the residence while unescorted. Plaintiff withdrew upstairs and avoided direct contact. Plaintiff further declares that, at approximately 10:49 a.m., he submitted an online supplemental narrative to the Orange Police Department under Tracking No. T26001551 and DR No. 26-02-0508. Plaintiff relies on the prompt report as contemporaneous evidence that he treated the event as a serious safety incident; he does not contend that police acceptance of a report adjudicated liability or proved the truth of every allegation.

**B. July 17, 2026 Aid Paid Pending Notice**

The State Hearings Division issued a July 17, 2026 notice in State Hearing No. SHN-105297062 stating 'POSTPONEMENT GRANTED-APP CONTINUES-CLAIMANT REQUEST.' The notice explains that Aid Paid Pending means receiving benefits or services at the same level while awaiting the hearing and that Aid Paid Pending would not change because of the postponement. Exhibit A. Plaintiff does not contend that this notice, standing alone, expressly identifies rent or Flexible Funds as an APP-covered benefit.

**C. September 9, 2026 Written Threat of Displacement Tied to Telecare Payment**

On the morning of September 9, 2026, Plaintiff received text messages from a person identified in his phone as 'Val From Agape.' At approximately 10:12 a.m., the sender wrote: 'If you're not going to at least have August's rent this week unfortunately I'm going to have to ask you to leave.' Exhibit B.

The same conversation expressly identified Telecare as the expected source of payment. The sender wrote: 'As a vendor we are missing two months rent. If you want

to take that up with Telecare that's fine. I just need a call from them this week that they will process your payment.' Exhibit C. The messages therefore connect the present threat to Plaintiff's occupancy with the unresolved Telecare rent-payment dispute already alleged in this action.

The September 9 messages materially change the emergency posture. At the time of the June 18 ruling, Plaintiff did not possess a contemporaneous written statement that he would be asked to leave during a specified week because of the unpaid rent. He now does.

**D. Plaintiff Alleges Dependent-Adult Status and Reliance on Intensive FSP Support**

The operative complaint separately alleges that Plaintiff is a dependent adult within the meaning of California Welfare and Institutions Code section 15610.23. That statute includes a California resident between 18 and 64 years of age whose physical or mental limitations restrict the ability to carry out normal activities or to protect his or her rights. Plaintiff does not contend that enrollment in an Adult Full Service Partnership automatically establishes dependent-adult status. Rather, he relies on his alleged functional limitations and on Telecare's provision of intensive behavioral-health treatment, case management, crisis response, housing support, and care coordination as corroborating circumstances.

Those circumstances matter to emergency harm. Plaintiff alleges that the threatened loss of his current housing would not operate as an ordinary monetary rent dispute, but would destabilize an existing treatment and support arrangement on which he relies to manage disability-related limitations, safety concerns, and housing stability.

**III. THE COURT MAY WAIVE ADVANCE NOTICE UNDER RULE 65(b) AND L.R. 7-19.2**

Rule 65(b)(1) permits a TRO without written or oral notice only when specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result before the adverse party can be heard and the movant

provides a written certification describing notice efforts and the reasons notice should not be required. Local Rule 7-19.2 permits the assigned judge to waive Local Rule 7-19.1 when the requisite Rule 65(b) showing is made.

Plaintiff's declaration certifies that the material displacement threat was received on the morning of September 9, 2026, at approximately 10:12 a.m.; that Plaintiff began preparing this renewed application immediately; and that separate advance oral notice was not completed before filing because Plaintiff seeks preservation of the housing status quo before the threatened action progresses. Plaintiff does not ask the Court to assume notice is automatically excused; he asks the Court to determine that the sworn facts satisfy Rule 65(b) and Local Rule 7-19.2. Plaintiff will promptly serve the application and any order as directed by the Court.

## IV. THE WINTER FACTORS FAVOR A SHORT, NARROW TRO

### A. Serious Questions and Likelihood of Success

A TRO is governed by the preliminary-injunction standard. A movant ordinarily must establish likelihood of success on the merits, likelihood of irreparable harm absent preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008). The Ninth Circuit also permits relief where serious questions go to the merits and the balance of hardships tips sharply toward the movant, provided the remaining Winter factors are satisfied. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-35 (9th Cir. 2011).

The operative verified complaint alleges that Plaintiff is a qualified individual with a disability; requested written or remote participation, trauma-informed treatment, safety planning, and emergency-transfer assistance; remained willing to participate through modified means; and was nevertheless characterized as non-engaged and subjected to service termination and housing-support discontinuation. Those allegations present serious questions under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act concerning meaningful access and reasonable modification.

See Duvall v. County of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001).

The verified complaint further alleges protected accommodation requests, grievances, administrative appeals, law-enforcement reporting, and federal litigation followed by challenged adverse actions including termination of services and rent-support discontinuation. The September 9 messages now show that the disputed rent-support issue is producing a concrete threat to Plaintiff's continued occupancy. The August 27 event additionally supports Plaintiff's contention that the safety concerns underlying his requests for modified engagement and transfer were continuing rather than abandoned or hypothetical.

The complaint also pleads a dependent-adult-neglect claim. Welfare and Institutions Code section 15610.57 defines neglect to include the negligent failure of a person having care or custody of a dependent adult to exercise reasonable care, including failures concerning shelter and protection from health and safety hazards. California law requires a substantial caretaking or custodial relationship involving ongoing responsibility for basic needs; ordinary outpatient treatment alone is insufficient. Winn v. Pioneer Medical Group, Inc., 63 Cal.4th 148, 158-160 (2016). Plaintiff alleges more than ordinary outpatient treatment: Telecare undertook FSP case management, crisis response, housing support or funding, and care coordination. Those allegations present a serious factual and legal question whether Telecare assumed the type of ongoing responsibility relevant to Plaintiff's pleaded dependent-adult-neglect claim.

**B. Immediate and Irreparable Harm**

The September 9 message states that Plaintiff will be asked to leave unless August rent is received this week. The Ninth Circuit has held that a documented threat of eviction can establish likely irreparable harm and has recognized that loss of an interest in real property is an irreparable injury. Park Village Apartment Tenants Association v. Mortimer Howard Trust, 636 F.3d 1150, 1159 (9th Cir. 2011). Here, the threatened housing loss is not a generalized fear; it is written, tied to a payment dispute, and directed to the current week.

The threatened displacement is compounded by the August 27 safety incident and Plaintiff's alleged dependent-adult limitations. Plaintiff alleges that Lee, whom Plaintiff had previously reported to law enforcement concerning the January 21 touching incident, appeared at the residence unescorted after Telecare had previously relayed separation and escort-related safety measures. Plaintiff further declares that his mental-health limitations restrict his ability to carry out normal activities and protect his rights during severe trauma and housing instability. Abrupt displacement would therefore disrupt not only shelter, but also an existing network of disability-related treatment, safety planning, housing support, and care coordination in ways not fully repairable by a later damages award.

**C. Balance of Equities and Public Interest**

The requested prohibitory relief is short in duration and preserves the present housing arrangement while allowing Defendants to appear promptly and contest the requested preliminary injunction. By contrast, absent relief Plaintiff faces a written threat of displacement during the same week in which the application is filed. The public interest favors orderly judicial review, compliance with federal disability and anti-retaliation law, protection of dependent adults from avoidable destabilization where the statutory criteria are ultimately proven, and avoiding unnecessary displacement before disputed issues are adjudicated.

**D. Any Affirmative Relief Is Requested Only as a Narrow Alternative**

Plaintiff recognizes that an order requiring a party to take affirmative action is a mandatory injunction and is subject to heightened scrutiny. Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (en banc); Park Village, 636 F.3d at 1160. Plaintiff therefore asks first for prohibitory relief against displacement and retaliation. Only if that relief cannot preserve the status quo does Plaintiff request the narrower alternative of temporary maintenance of the existing rent-support arrangement or coordination of a temporary neutral placement. The alternative relief is tied specifically to preventing the imminent housing and safety harms identified in the declaration.

**V. THE REQUESTED RELIEF IS TAILORED TO THE SPECIFIC EMERGENCY**

Plaintiff does not ask the Court on this emergency application to adjudicate ultimate rent liability, ownership rights, the final scope of Aid Paid Pending, criminal responsibility for the January 21 or August 27 events, final dependent-adult status, or damages. The requested TRO would preserve housing, reduce direct-contact risk, and prohibit retaliation only until the Court can consider preliminary injunctive relief on a fuller record.

**VI. PRIOR TRO DISCLOSURE**

Plaintiff discloses that the Court denied an earlier TRO request on June 18, 2026. This renewed application is submitted to the same assigned District Judge and relies on material facts arising after that ruling, including the August 27 safety incident and, most importantly, the September 9 written threat of displacement. To the extent any portion of this filing is treated as reconsideration, Plaintiff relies on the emergence of new material facts after the prior order and does not merely repeat the earlier factual showing.

**VII. SECURITY**

Plaintiff requests that security under Rule 65(c) be waived or set at a nominal amount. Plaintiff seeks temporary preservation of housing and safety while alleging severe financial hardship. The amount and necessity of security remain within the Court's discretion.

**VIII. CONCLUSION**

Plaintiff respectfully requests issuance of the proposed TRO without advance notice, waiver of Local Rule 7-19.1 under Local Rule 7-19.2, and an expedited order to show cause why a preliminary injunction should not issue.

This ex parte application complies with Local Rule 7-19's requirements.

DATED: September 9, 2026

Respectfully submitted,

/s/ Joshua Shawn Dudley

**JOSHUA SHAWN DUDLEY**

Plaintiff, Pro Se

**CERTIFICATE OF COMPLIANCE UNDER L.R. 11-6.2**

The undersigned Plaintiff, appearing pro se, certifies that this memorandum contains 2191 words and complies with the 7,000-word limit of L.R. 11-6.1.

/s/ Joshua Shawn Dudley

**JOSHUA SHAWN DUDLEY**

DATED: September 9, 2026