FILED
CLERK, U.S. DISTRICT COURT
9/20/2026
CENTRAL DISTRICT OF CALIFORNIA
BY IV DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**JOSHUA SHAWN DUDLEY**
2600 E. Dorothy Drive
Orange, California 92869
Telephone: (949) 621-6238
Email: jdudley279@gmail.com
Plaintiff, Pro Se

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

**JOSHUA SHAWN DUDLEY,**
Plaintiff,
v.
**COUNTY OF ORANGE; TELECARE CORPORATION; RONALD D. LEE, JR.;**
DOES 1 through 10, inclusive,
Defendants.

**Case No. 8:26-cv-01530-SSS-PD**
**SECOND AMENDED VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL**

## I. JURISDICTION AND VENUE

1. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal law, including Title II of the ADA, Section 504 of the Rehabilitation Act, the Fair Housing Act (42 U.S.C. §§ 3604, 3617), Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d), and 42 U.S.C. § 1983.

2. This Court has jurisdiction under 28 U.S.C. § 1343(a)(3) over claims seeking redress for deprivation of rights secured by the Constitution and laws of the United States.

3. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over related state-law claims arising from the same factual circumstances.

4. Venue is proper under 28 U.S.C. § 1391(b) because substantial events and omissions giving rise to Plaintiff's claims occurred in Orange County, California.

**II. INTRODUCTION**

5. Plaintiff Joshua Shawn Dudley brings this civil rights and disability discrimination action arising from Defendants' handling of Plaintiff's report of unwanted and nonconsensual sexual touching at a residence to which Plaintiff had been placed through Telecare Corporation's County-contracted Adult Full Service Partnership ("FSP") program, and the subsequent coordinated campaign of administrative, economic, and racial retaliation designed to force him out of his housing and prevent him from accessing justice.

6. Plaintiff alleges that, after receiving his report of sexual assault and requests for safety measures, Telecare failed to provide the comprehensive written safety process Plaintiff requested, communicated with the person Plaintiff identified in his report, did not provide the emergency-transfer assistance Plaintiff requested, and later discontinued rent support while Plaintiff remained enrolled in services and pursued administrative review.

7. Plaintiff further alleges that County personnel treated disability-related safety limitations as "non-engagement," upheld the retaliatory termination of Plaintiff's behavioral-health services, and declined to investigate Plaintiff's housing-related safety allegations based substantially on the pretextual characterization of the residence as outside County oversight.

8. Plaintiff does not allege that a criminal conviction resulted from the January 21, 2026 incident. Plaintiff alleges the incident as reported unwanted and nonconsensual touching and relies upon his report of that incident as part of the factual circumstances giving rise to Defendants' subsequent conduct.

9. Following the filing of Plaintiff's civil rights claims and his successful

procurement of a state administrative order for Aid Paid Pending (APP), Defendants escalated their retaliatory campaign. This included the house manager of the County-funded facility subjecting Plaintiff to vile verbal and racial abuse to bait a reaction, and Telecare clinical staff maliciously refusing to sign Plaintiff's General Relief (GR) medical verification forms--manufacturing a bad-faith "three-times provider visit" rule--to cut off his monthly cash aid, leaving him unable to buy basic food or feed his legally protected service dog.

10. Plaintiff brings claims under Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, the Fair Housing Act ("FHA"), Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 1983, and applicable California law.

## III. PARTIES

11. Plaintiff Joshua Shawn Dudley is an adult residing in Orange County, California. He is an African American individual and a qualified individual with a disability.

12. Defendant County of Orange ("County") is a public entity responsible for administering, funding, supervising, and overseeing County Behavioral-health programs and services, including programs administered through the Orange County Health Care Agency.

13. Defendant Telecare Corporation ("Telecare") is a private corporation that operated the Telecare and Orange ("TAO") Central Adult Full Service Partnership program under contract with the County. At all times relevant hereto, Telecare acted under color of state law pursuant to its delegated governmental functions, pervasive contractual ties, and joint participation with the County under Contracts MA-042-21010167 and MA-042-22011474.

14. TAO Central FSP is alleged to be a program operated by Telecare and is not alleged to be a separate legal entity.

15. Defendant Ronald D. Lee, Jr. was the operator or owner associated with the

residence at 2600 East Dorothy Drive, Orange, California.

16. Plaintiff does not presently know the identities of DOES 1 through 10. Plaintiff will amend this Complaint to substitute their true names when their identities are discovered.

**IV. FACTUAL ALLEGATIONS**

**A. Plaintiff's Disability and FSP Services**

17. Plaintiff was enrolled in Telecare's TAO Central Adult FSP program because of serious mental-health conditions and related functional limitations, including Post-Traumatic Stress Disorder (PTSD).

18. Plaintiff's disability-related limitations affected his ability to manage trauma-related stress, safely participate in certain in-person encounters, and maintain housing stability without appropriate support.

19. Plaintiff required behavioral-health treatment, case management, crisis response, housing assistance, and care coordination.

20. Plaintiff informed Defendants of disability-related needs that included written or remote communication, trauma-informed treatment, a female therapist, safety planning, and emergency-transfer assistance.

21. Plaintiff alleges that his disability-related limitations substantially affected his ability to protect himself and maintain treatment participation under circumstances that he reasonably perceived as unsafe.

22. Throughout the critical period surrounding the January 2026 touching incident, subsequent safety reports, and the termination of his services, Telecare failed to provide Plaintiff with any assigned case manager. Plaintiff's designated FSP case manager, Ricardo Talbert, left Telecare in approximately December 2025 or January 2026. Telecare failed to assign a replacement case manager to Plaintiff's case for approximately four months, leaving him without any assigned care coordinator or case manager until Kerry was assigned in approximately May 2026.

23. During this four-month clinical staffing vacancy, Plaintiff was left completely

abandoned by his treatment team at the exact time he was experiencing a severe safety and psychiatric crisis following the January 21, 2026 incident. Despite Plaintiff's repeated written pleas for emergency safety planning, no-contact directives, and emergency-housing transfer assistance, there was no case manager assigned to manage, coordinate, or implement these requested disability-related modifications. Telecare's and the County's subsequent characterization of Plaintiff's safety-related limitations as "non-engagement" is thereby directly contradicted by their own failure to assign a clinical case manager to Plaintiff's FSP care during this entire four-month period.

**B. Telecare's Housing Role**

24. Telecare placed Plaintiff at 2600 East Dorothy Drive, Orange, California, a residence identified in Plaintiff's records as Agape or Dorothy House.

25. Telecare paid rent or provided housing support on Plaintiff's behalf using program funds, including Flexible Funds.

26. Telecare coordinated Plaintiff's behavioral-health treatment and housing-related support as part of the FSP relationship.

27. Plaintiff does not allege that Telecare was his landlord. Plaintiff alleges instead that Telecare placed him at the residence, funded supported rent, coordinated services, and responded to Plaintiff's safety complaint.

28. The direct, active, and coordinated nature of Telecare's housing role is confirmed by Telecare's own clinical records. Specifically, a clinical progress note dated April 2, 2024, prepared by Telecare Case Manager Rosie Martinez and formally approved by Supervisor and Program Administrator Felicia Tara Taing, documents that Telecare actively directed Plaintiff's housing financial affairs and explicitly informed him that "paying rent is now mandatory for all members" in their housing program.

29. Plaintiff complied with Telecare's housing and rent requirements in good faith, making payments directly to Telecare. For example, Plaintiff paid rent directly to

Telecare via Western Union Money Order No. 22072585202 in the amount of $31.10, which was marked as a rent payment to Telecare. This payment, alongside Telecare's clinical mandate, establishes a direct financial and clinical relationship regarding his housing placement, belying any claim that the residence was entirely independent or outside Telecare's programmatic control.

**C. January 21, 2026 Incident**

30. On January 21, 2026, at approximately 7:30 p.m., Plaintiff was washing dishes at the residence.

31. Plaintiff alleges that Ronald D. Lee, Jr. approached him from behind without consent, placed one hand on Plaintiff's left buttock or lower-back area and the other hand on Plaintiff's left shoulder, rubbed Plaintiff for approximately fifteen seconds, and stated, "I want some of that."

32. Plaintiff did not consent to the contact. Plaintiff became shocked and temporarily unable to respond.

33. Plaintiff alleges that the housing manager was present in the residence during or immediately after the encounter and that Plaintiff subsequently separated himself from Lee and left the immediate area.

34. Plaintiff reported the incident to the housing manager at approximately 8:30 p.m.

35. On February 18, 2026, Plaintiff reported the incident to the Orange Police Department. The report identifies the residence, Lee, the reported conduct, and Orange Police Department Report No. 26-02-0508.

36. Plaintiff does not allege that the housing manager witnessed the touching itself.

**D. Notice to Telecare and Requests for Protection**

37. On January 25, 2026, at approximately 1:46 a.m., Plaintiff sent Telecare a written report describing the alleged touching and sexual statement.

38. Plaintiff requested a written no-contact directive, restricted-access and escort procedures, a written safety plan, preservation of relevant evidence, protection

against retaliation, and emergency-transfer assistance.

39. On January 28, 2026, at approximately 9:57 a.m., Telecare Program Administrator Felicia Tara Taing acknowledged Plaintiff's report and stated that she was working with Telecare corporate personnel concerning an investigation.

40. Telecare therefore had actual notice of Plaintiff's report, his asserted safety concerns, and his requests for protective measures.

**E. Release-of-Information Communications**

41. On February 10, 2026, Taing asked Plaintiff to complete a release of information so that she could communicate with Lee concerning matters Plaintiff had reported.

42. Plaintiff alleges that he signed the release but did not complete all fields and did not authorize Telecare to complete the remaining fields.

43. On February 18, 2026, Plaintiff objected to using Lee to confirm Plaintiff's account and requested a copy of the release.

44. The Orange County Health Care Agency grievance resolution later stated that Plaintiff reported the incomplete release and that the Orange County Health Care Agency reviewed communications between Plaintiff and Taing.

45. The grievance resolution stated that the communications concerned housing-related safety matters rather than diagnoses, treatment history, medications, or other clinical information.

46. Plaintiff does not assert a private cause of action under HIPAA. Plaintiff alleges the release-related communications as evidence concerning notice, the adequacy of Telecare's response, and the circumstances preceding later adverse actions.

**F. Safety Measures**

47. On February 13, 2026, Taing informed Plaintiff that the housing owners represented that common-area cameras had been reactivated, that Lee should not have unnecessary contact with Plaintiff, and that Lee would be escorted if necessary.

48. Taing also stated that TAO Central did not operate the transitional housing but would partner with housing personnel.

49. Plaintiff did not receive the comprehensive written safety plan he had requested, including a designated enforcement person, emergency procedures, monitoring procedures, and consequences for violations.

50. On February 17, 2026, Plaintiff observed Lee outside Plaintiff's room and feared that the stated separation measures were not being adequately enforced.

**G. Emergency Transfer and Disability-Related Accommodation Requests**

51. On May 4, 2026, Plaintiff emailed Telecare Clinical Director Jena Nguyen requesting assistance with emergency-transfer paperwork and transfer to Belmont Shores because of his continuing safety concerns.

52. Plaintiff also requested a female therapist, trauma-focused treatment, written safety planning, and written or alternative communication.

53. Nguyen responded on May 6, 2026, that she could not complete the requested form because Plaintiff had not been seen by Telecare staff, a provider, or a case manager.

54. On May 6, 2026, Plaintiff requested written confirmation of a safety plan, a therapy schedule, a female therapist, and written or alternative communication.

55. On May 20, 2026, Plaintiff informed Nguyen that he would not attend further in-person meetings until Telecare established a comprehensive safety protocol concerning the circumstances Plaintiff had reported. Plaintiff stated that he remained available for remote or written engagement.

56. Plaintiff's position was based upon his stated safety concerns and disability-related limitations. Plaintiff did not intend to abandon behavioral-health treatment.

**H. Notice of Adverse Benefit Determination and Appeal**

57. Telecare issued a Notice of Adverse Benefit Determination ("NOABD") dated

May 1, 2026, proposing termination of Plaintiff's Specialty Mental Health Services effective May 11, 2026.

58. Plaintiff received the NOABD on or about May 4, 2026.

59. On May 6, 2026, Plaintiff emailed Telecare a written appeal of the NOABD and requested continuation of services and housing support while pursuing administrative review.

60. Plaintiff stated that he remained willing to engage through written or modified means and that his safety-related limitations should not be treated as abandonment of services.

61. On May 7, 2026, Plaintiff's online supplemental police submission was received under tracking number T26000830. The Orange Police Department subsequently rejected the supplemental narrative on the stated grounds that it concerned treatment and housing matters rather than the original incident.

62. On May 8, 2026, Plaintiff transmitted a sixteen-page fax to the Orange County Health Care Agency Managed Care fax number. The fax confirmation states that the transmission was successful at approximately 2:25 p.m.

63. The Orange County Health Care Agency acknowledged receipt of Plaintiff's appeal on May 11, 2026, and stated that an appeal could be filed orally or in writing.

64. Plaintiff has video evidence documenting that on May 8, 2026, he went in person to the Orange County Health Care Agency office at 400 W. Civic Center Drive to submit his physical appeal and supporting evidence. The video records that County representative Esmeralda Carroll refused to accept Plaintiff's physical appeal documentation in person. The video further documents that three-armed law enforcement officers (Sheriff's deputies stationed at the building) were present during this interaction. Plaintiff alleges that this refusal to accept his physical evidence in person, combined with the presence of multiple law enforcement officers, created a highly pressurized and intimidating administrative environment

that delayed, impeded, and obstructed his efforts to obtain prompt administrative review.

65. State Hearing No. SHN-105297062 subsequently proceeded through the state administrative process. A July 17, 2026, notice stated that the hearing had been postponed and addressed the continuation of Aid Paid Pending.

**I. Discontinuation of Rent Support**

66. On June 1, 2026, Nguyen informed Plaintiff that Telecare was no longer responsible for paying rent to Agape and that rent would thereafter be Plaintiff's responsibility.

67. The same communication stated that Plaintiff remained enrolled in services pending the State Fair Hearing.

68. On June 2, 2026, the Orange County Health Care Agency upheld termination of Plaintiff's Specialty Mental Health Services, citing alleged lack of treatment participation and alleged nonresponse to outreach.

69. The Orange County Health Care Agency's decision acknowledged Plaintiff's position that he would not reengage under the existing in-person conditions until Telecare established a comprehensive safety protocol concerning the housing owner.

70. The Orange County Health Care Agency denied Aid Paid Pending for rental assistance on the stated ground that the assistance was funded through Flexible Funds and Mental Health Services Act funds rather than Medi-Cal.

71. Plaintiff alleges that treating his safety-based disability-related limitation as "non-engagement," terminating services, and discontinuing rent support impaired his access to treatment and threatened his housing stability.

**J. Post-Filing Retaliation, Racial Harassment, and Economic Warfare**

72. Following Plaintiff's July 17, 2026 administrative-hearing postponement, which stated that Aid Paid Pending remained unchanged during the postponement, Plaintiff alleges that housing-related pressure and retaliatory conduct escalated.

73. Plaintiff alleges that, after the July 17, 2026 postponement, the house manager at the residence subjected Plaintiff to severe verbal and racial abuse, including statements that Plaintiff "wasn't shit" and that his "fucking black ass is destroying this house." Plaintiff alleges the confrontation was intended to provoke a reaction that could be used to justify removal or other adverse action. Plaintiff states that he retreated to his room and prepared a contemporaneous written incident report.

74. On June 13, 2026, another intermediary resident/staff member named David, acting under the direction of the housing operators, confronted Plaintiff in the kitchen area of the residence to intimidate him regarding his civil rights lawsuit, stating: "You'd take his house? After all he's done for you in the past five years." When Plaintiff attempted to de-escalate and walk away, David aggressively pursued him up the stairs to his room to continue the harassment, as documented in Plaintiff's contemporaneous written incident report (filed as "david report june.pdf").

75. During the same period, Telecare staff declined to sign Plaintiff's General Relief medical-verification or incapacity forms and stated that Plaintiff was required to see a provider three times before the forms would be signed or advocacy facilitated. Plaintiff alleges that this requirement was used to impede his access to General Relief benefits.

76. By withholding these vital medical verifications, Telecare intentionally cut off Plaintiff's only source of monthly cash aid. This economic starvation left Plaintiff entirely without financial resources to purchase food, hygiene products, or basic food for his trained psychiatric service animal (which operates as a legally protected disability accommodation under the ADA).

77. On August 24, 2026, Plaintiff formally reported this racial harassment, benefits withholding, and denial of advocacy access to the County Patients' Rights Office and Adult Protective Services (APS), obtaining immediate digital auto-replies establishing that the County had actual, contemporaneous notice of these ongoing

abuses. K. County Review and Systemic Negligence

78. On July 2, 2026, the Orange County Health Care Agency's Office of Compliance declined to open a discrimination investigation, asserting that Agape was outside its jurisdiction.

79. This jurisdictional shield is directly contradicted by Telecare's active, clinical, and financial management of Plaintiff's housing, as well as the County's multi-million dollar contracts with Telecare (Contracts MA-042-21010167 and MA-042-22011474), which explicitly mandate compliance with Title VI, Patients' Rights, and nondiscrimination laws.

80. The County's administrative disorganization and bad faith are further documented by a critical shift in their official fax routing numbers. While official QMS cover sheets distributed by Ashley Cortez, LCSW, listed the fax number as (714) 480-0775, newer cover sheets distributed by Catherine Shreenan, LMFT, and Jennifer Fernandez, LCSW, listed the number as (714) 834-6575.

81. Because the County maintained multiple overlapping, uncoordinated fax numbers and failed to program their receiving machines to return a Called Subscriber Identification (CSID / Fax ID) on successful transmissions--leaving the Fax ID completely blank on Plaintiff's successful MyFax logs--the County's own network duplicated Plaintiff's successful 16-page appeal, printing it out twice. Defendant County's representative, Esmeralda Carroll, then utilized this internal HCA IT duplication error to fabricate a pretextual accusation that Plaintiff had flooded their office with "33 identical pages" to justify physically locking him out of in-person filing on May 8, 2026.

82. Plaintiff further alleges that the County's administrative record, specifically the July 15, 2026 Statement of Position ("SOP") submitted by Carroll, contains highly coordinated, bad-faith fabrications and material misrepresentations designed to manufacture a pretextual "non-engagement" and "voluntary closure" narrative, including: (a) falsifying the date and clinical response of the June 1, 2026

unannounced outreach visit to claim Plaintiff "declined services"; (b) mischaracterizing his disability-related safety requests for remote and alternative communication on May 6-7 as voluntary refusal of treatment; (c) falsely alleging that Plaintiff's behavior on May 8 escalated and caused Sheriff's deputies to respond, when Plaintiff himself proactively requested law enforcement's presence to ensure a safe, documented filing environment; (d) fabricating a May 8 "apology call" at 4:25 p.m. to minimize his legitimate objections; (e) fabricating a claim of receiving "33 identical faxed pages" to excuse Carroll's arbitrary refusal of physical appeal papers in the lobby; and (f) asserting the County had no "jurisdiction" over his safety grievance, when clinical progress notes and money orders paid directly to Telecare prove his housing was a programmatically mandated and financially administered benefit of the FSP.

83. Plaintiff alleges that this systematic fabrication of administrative records and physical harassment is direct evidence of pretext, bad faith, and intentional, retaliatory, and discriminatory animus by the County and its representatives, in violation of Title II of the ADA, Section 504 of the Rehabilitation Act, the Fair Housing Act, Title VI of the Civil Rights Act, and the First Amendment. L. Government Claim

84. On April 23, 2026, Plaintiff presented a formal written claim to the County of Orange, which was assigned Claim No. 20260335. Plaintiff subsequently submitted supplemental filings to this existing claim via UPS: one to the County of Orange Office of Risk Management under tracking number 1Z2H993D2912428929 (delivered June 4, 2026\), and one to Telecare Corporation under tracking number 1Z2H993D2915612910 (delivered June 4, 2026).

85. These supplemental filings provided additional factual details and notice to both the County and Telecare regarding the continuing retaliation, service termination, and housing-support discontinuation described herein.

86. On June 24, 2026, the County of Orange Office of Risk Management issued a

formal notice rejecting Claim No. 20260335. Plaintiff has thereby fully exhausted his administrative remedies under the California Government Claims Act, and this action is timely filed within the six-month statutory deadline following that rejection. M. Damages and Continuing Effects

87. As a result of the conduct alleged herein, Plaintiff suffered severe emotional distress, fear, racial trauma, psychiatric retraumatization, sleep disruption, worsening PTSD symptoms, impaired treatment engagement, extreme financial hardship, and housing instability.

88. Plaintiff incurred or may incur rent, relocation, transportation, counseling, medical, psychiatric, and other expenses, as well as the loss of vital public benefits.

89. Plaintiff seeks damages according to proof and all remedies authorized by applicable law.

90. To the extent Plaintiff seeks prospective relief, Plaintiff alleges that the challenged conduct has continuing consequences and that Plaintiff remains subject to conditions affecting his access to behavioral-health services, disability accommodations, housing-related support, and protection from retaliation. Plaintiff seeks prospective relief only to the extent an actual and ongoing controversy exists at the time such relief is adjudicated.

**V. FIRST CAUSE OF ACTION Violation of Title II of the Americans with**

**Disabilities Act 42 U.S.C. §§ 12131-12134 (Against County of Orange)**

91. Plaintiff incorporates by reference paragraphs 1 through 90 as though fully set forth herein.

92. Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(2).

93. Defendant County of Orange is a public entity within the meaning of 42 U.S.C. § 12131(1).

94. The County's behavioral-health services constitute services, programs, or

activities of a public entity.

95. Plaintiff requested reasonable modifications to the manner in which he participated in behavioral-health services, including written or remote engagement, trauma-informed treatment, a female therapist, safety planning, and emergency-transfer assistance.

96. Plaintiff informed Defendants that his inability or unwillingness to participate in certain in-person encounters under the existing circumstances was related to disability, trauma, and safety concerns.

97. Plaintiff further informed Defendants that he remained willing to participate through written or alternative means.

98. Plaintiff alleges that the requested modifications were intended to permit continued participation in services while addressing the disability-related limitations Plaintiff had identified.

99. County personnel nevertheless relied materially upon Plaintiff's alleged non-engagement and upheld termination of services without adequately addressing Plaintiff's requested modifications.

100. Plaintiff alleges that the County thereby denied him meaningful access to its behavioral-health services and failed to reasonably modify its practices where necessary to avoid disability-based exclusion, in violation of Title II of the ADA and applicable implementing regulations, including 28 C.F.R. § 35.130(b)(7) (promulgated Aug. 11, 2016, 81 Fed. Reg. 53225).

101. Plaintiff seeks remedies available under Title II, including damages to the extent authorized by law and prospective relief to the extent an actual and ongoing controversy exists.

**VI. SECOND CAUSE OF ACTION Violation of Section 504 of the Rehabilitation**

**Act 29 U.S.C. § 794 (Against County of Orange)**

102. Plaintiff incorporates by reference paragraphs 1 through 101 as though fully

set forth herein.

103. Plaintiff is an otherwise qualified individual with a disability within the meaning of 29 U.S.C. § 705(20).

104. Plaintiff alleges, on information and belief, that the County receives federal financial assistance in connection with programs or activities relevant to the behavioral-health services at issue.

105. Plaintiff requested reasonable modifications and remained willing to participate through written or alternative means.

106. Plaintiff alleges that County personnel treated disability-related limitations as non-engagement and relied materially upon that characterization when upholding termination of Plaintiff's services.

107. Plaintiff alleges that the challenged conduct denied him meaningful access to a program or activity receiving federal financial assistance because of his disability and disability-related limitations.

108. Plaintiff seeks remedies available under 29 U.S.C. § 794a to the extent authorized by law.

**VII. THIRD CAUSE OF ACTION Retaliation Under Title II of the ADA and**

**Section 504 of the Rehabilitation Act 42 U.S.C. § 12203; 29 U.S.C. § 794 (Against**

**County of Orange and Telecare Corporation)**

109. Plaintiff incorporates by reference paragraphs 1 through 108 as though fully set forth herein.

110. Plaintiff engaged in activity protected by the ADA and Rehabilitation Act by requesting disability-related accommodations and modifications, objecting to the treatment of his disability-related limitations as non-engagement, requesting an advocate, and filing a federal civil rights lawsuit.

111. Defendants knew of Plaintiff's protected activity.

112. After Plaintiff made accommodation requests and objections, and filed his lawsuit, Defendants proceeded with or participated in severe adverse actions, including terminating his services, discontinuing rent support, actively refusing to sign his medical verification forms, and manufacturing fabricated rules to block his access to legal and patients' rights advocacy.

113. Plaintiff alleges that these actions occurred in close temporal and factual proximity to his protected requests and civil filings, and that his protected activity was a motivating factor in the challenged conduct.

114. Plaintiff alleges that the challenged conduct constituted retaliation for protected activity in violation of 42 U.S.C. § 12203 and 29 U.S.C. § 794.

115. Plaintiff seeks all remedies authorized by applicable law.

**VIII. FOURTH CAUSE OF ACTION First Amendment Retaliation Under 42 U.S.C. § 1983 (Against County of Orange and Telecare Corporation)**

116. Plaintiff incorporates by reference paragraphs 1 through 115 as though fully set forth herein.

117. Plaintiff exercised rights protected by the First Amendment by petitioning governmental authorities concerning matters of public and personal concern, including submitting complaints, grievances, administrative appeals, requesting an advocate, and filing a federal civil rights lawsuit.

118. Defendants were aware of Plaintiff's protected activity.

119. Plaintiff alleges that Defendants subsequently took adverse actions-- including terminating behavioral health services, refusing to sign General Relief verifications to cut off cash aid, and permitting ongoing housing harassment-- in retaliation for Plaintiff's protected complaints, objections, and administrative/judicial filing activity.

120. Plaintiff alleges that the challenged conduct would deter a person of ordinary firmness from continuing to exercise the right to petition governmental authorities.

121. Plaintiff alleges that the County's responsible policymakers, officials, or personnel acting pursuant to County policy, custom, practice, or official decision caused or participated in the constitutional deprivation alleged herein.

122. Plaintiff does not seek to impose liability upon the County solely under a theory of respondeat superior.

123. Plaintiff alleges that the County maintained, implemented, ratified, or permitted practices under which housing-related safety complaints involving County-contracted FSP services were treated as categorically outside County responsibility, and disability-related safety limitations were treated as non-engagement without adequate consideration of the circumstances.

124. Plaintiff alleges that the County's policy, custom, practice, ratification, or official decision was a moving force in the deprivation of Plaintiff's First Amendment rights.

125. Plaintiff seeks relief authorized by 42 U.S.C. §§ 1983 and 1988.

**IX. FIFTH CAUSE OF ACTION Violation of the Fair Housing Act (Hostile Housing Environment & Retaliation) 42 U.S.C. §§ 3604(f), 3617 (Against Ronald D. Lee, Jr., Telecare Corporation, and County of Orange)**

126. Plaintiff incorporates by reference paragraphs 1 through 125 as though fully set forth herein.

127. Plaintiff is a qualified individual with a disability (PTSD) and an African American individual. He resided in housing funded and programmatically managed by Defendants Telecare and the County under the FSP.

128. Under 42 U.S.C. § 3604(f), it is unlawful to discriminate against any buyer or renter in the provision of services or facilities in connection with a dwelling because of a disability. Under 42 U.S.C. § 3617, it is unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account

of his having exercised or enjoyed, any right granted or protected by the Fair Housing Act.

129. Following Plaintiff's reports of sexual assault by Defendant Ronald D. Lee, Jr. and the subsequent filing of his federal civil rights lawsuit, Plaintiff was subjected to a severe, pervasive, and hostile housing environment, including physical intimidation by David (an agent of the housing operators) and vile racial slurs from the facility's house manager designed to force Plaintiff out of his FSP housing.

130. Defendants Telecare and the County had actual notice of this hostile housing environment through Plaintiff's incident reports, grievances, and emergency-transfer requests. Despite their contractual control and clinical oversight, they failed to take any corrective action, refused to coordinate Plaintiff's requested transfer to Belmont Shores, and instead actively cut off his rental funding while his appeal was active.

131. Plaintiff alleges that this conduct constitutes a direct violation of 42 U.S.C. §§ 3604(f) and 3617.

132. Plaintiff seeks all remedies available under the Fair Housing Act, including compensatory damages, punitive damages, and injunctive relief.

**X. SIXTH CAUSE OF ACTION Violation of Title VI of the Civil Rights Act of 1964 42 U.S.C. § 2000d (Against County of Orange and Telecare Corporation)**

133. Plaintiff incorporates by reference paragraphs 1 through 132 as though fully set forth herein.

134. Title VI of the Civil Rights Act of 1964 provides that "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

135. Plaintiff is an African American individual.

136. Defendants County of Orange and Telecare Corporation receive federal financial assistance to administer and operate the Adult Full Service Partnership (FSP) program.

137. In connection with this federally funded program, Defendants placed Plaintiff in a housing environment where he was subjected to egregious, racially discriminatory verbal abuse and harassment by their contracted housing manager, who screamed that Plaintiff's "black ass is destroying this house."

138. Despite receiving actual notice of this severe racial harassment and hostile environment, Defendants demonstrated deliberate indifference by failing to investigate, failing to intervene, and actively maintaining Plaintiff's placement in the hostile environment while terminating his clinical services.

139. Plaintiff alleges that the Defendants' deliberate indifference to severe, racially hostile treatment in a federally funded program constitutes a direct violation of Title VI.

140. Plaintiff seeks all remedies available under Title VI, including compensatory damages and injunctive relief.

**XI. SEVENTH CAUSE OF ACTION Neglect of a Dependent Adult Cal. Welf. & Inst. Code §§ 15610.23, 15657 (Against Telecare Corporation and DOES 1-10)**

141. Plaintiff incorporates by reference paragraphs 1 through 140 as though fully set forth herein.

142. Plaintiff was a dependent adult within the meaning of California Welfare and Institutions Code § 15610.23 during the relevant period.

143. Telecare undertook responsibilities relating to Plaintiff's behavioral-health treatment, case management, crisis response, housing placement or support, and care coordination.

144. Telecare had actual notice of Plaintiff's report, his severe psychiatric safety

crisis, the racial harassment in his home, and his immediate need for benefits verification.

145. Telecare failed to exercise reasonable care in responding to known circumstances affecting Plaintiff's safety and care, including by failing to provide the comprehensive safety process requested, failing to coordinate requested emergency-transfer assistance, treating Plaintiff's safety-related limitations as non-engagement, and actively refusing to sign his General Relief medical verifications to deprive him of basic food and necessities.

146. Plaintiff alleges that these acts and omissions constitute willful, malicious, and oppressive neglect and abuse under California Welfare and Institutions Code § 15657, causing severe mental suffering, physical distress, treatment disruption, and financial loss.

147. Plaintiff seeks statutory remedies under California Welfare and Institutions Code § 15657, including attorney's fees and enhanced damages.

**XII. EIGHTH CAUSE OF ACTION Negligence (Against Telecare Corporation and DOES 1-10)**

148. Plaintiff incorporates by reference paragraphs 1 through 147 as though fully set forth herein.

149. Telecare undertook to provide Plaintiff behavioral-health treatment, case management, crisis response, housing-related support, and care coordination.

150. Plaintiff alleges that, having undertaken those services and having received actual notice of specific safety, benefit, and housing crises, Telecare was required to exercise reasonable care in performing the services it undertook and responding to known risks within the scope of those services.

151. Plaintiff alleges that Telecare breached the applicable duty of reasonable care by, among other things:

a. failing to reasonably respond to Plaintiff's reports of sexual assault and racial

harassment;

b. failing to provide the comprehensive safety process Plaintiff requested;

c. failing to adequately coordinate requested emergency-transfer assistance;

d. treating Plaintiff's disability-related safety limitation as non-engagement;

e. discontinuing rent support while Plaintiff remained enrolled in services and pursued administrative review; and

f. refusing to sign Plaintiff's monthly General Relief incapacity forms to deprive him of basic survival resources.

152. Plaintiff alleges that the acts and omissions described above were substantial factors in causing his emotional distress, treatment disruption, housing instability, financial loss, and other legally cognizable damages.

153. Plaintiff seeks compensatory damages and other relief authorized by applicable California law.

**XIII. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and provide the following relief to the extent authorized by law:

**A. A declaration concerning Defendants' obligations under applicable federal law;**

**B. Compensatory damages according to proof;**

**C. Economic and statutory damages according to proof;**

**D. Punitive damages against Defendant Ronald D. Lee, Jr. and Defendant Telecare Corporation for willful, malicious, and retaliatory conduct to the extent permitted by law;**

**E. Prospective injunctive relief concerning lawful procedures for disability accommodations, safety-related complaints, and protection against**

**retaliation, but only to the extent an actual and ongoing controversy exists;**

**F. Statutory remedies available under the ADA, Rehabilitation Act, and Fair Housing Act;**

**G. Enhanced remedies and attorney's fees under California Welfare and Institutions Code § 15657;**

**H. Reasonable attorney's fees and costs to the extent authorized by 42 U.S.C. § 1988, 42 U.S.C. § 12205, 29 U.S.C. § 794a, and other applicable law;**

**I. Prejudgment and postjudgment interest where authorized by law; and**

**J. Such other relief as the Court determines to be just and proper.**

## XIV. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 20, 2026

**Respectfully submitted,**

/s/ Joshua Shawn Dudley

**JOSHUA SHAWN DUDLEY**
Plaintiff, Pro Se
2600 East Dorothy Drive
Orange, California 92869
Telephone: 949-621-6238
Email: jdudley279@gmail.com

VERIFICATION

I, Joshua Shawn Dudley, declare under penalty of perjury under the laws of the United States that I have read the foregoing Second Amended Complaint and that the factual allegations contained therein are true and correct to the best of my

knowledge, information, and belief, except for matters expressly stated on information and belief, which I believe to be true.

Executed on September 20, 2026, in Orange County, California.

/s/ Joshua Shawn Dudley

**JOSHUA SHAWN DUDLEY**

Plaintiff, Pro Se